Next case of the morning is number 19-10034, Marsh v. Specialized Loan Servicing. Mr. Marsh, whenever you're ready. So are you pro se or are you a lawyer? I'm pro se, Your Honor, and I'm a practicing lawyer as well. May it please the Court. By way of brief factual background, the appellants in this case purchased a residence in Dallas in August 2006. They obtained a mortgage from Realty Mortgage. In 2009, they fell behind on their payments. Mrs. Marsh was diagnosed with breast cancer, underwent surgery and radiation, and was the person who was primarily responsible for paying the personal bills and simply got overwhelmed and left behind. At that time, Wells Fargo was the mortgage servicer on the loan, and the parties entered into a loan modification agreement dated May 7, 2009, that was signed both by the Marshes and Wells Fargo and cured any prior default. Since that time, the Marshes paid $10,000 down as required by Wells Fargo as their additional payment on the loan modification and monthly mortgage payments made timely for several months beginning July 2009 through March 2010. In January 2010, Wells Fargo purported to deny the loan modification agreement when a second lien was filed on the property, a second lien that was junior to the Wells Fargo or the Wells Fargo mortgage. SLS, one of the defendants of appellees in this case, simply says there's no evidence whatsoever of any loan modification agreement, there's no evidence to that effect, and that assertion is simply untrue. Wells Fargo then asserted the plaintiffs were at default. What relief do you seek? Ultimately, the relief we seek is relief to the effect that SLS is not the quote-unquote mortgage servicer under the Texas Property Code Chapter 51, specifically 51.001, as well as the fact that the statute of limitations has run. Those are legal holdings you seek. What relief do you seek in the lawsuit? A declaratory judgment, and we were seeking injunctive relief as well, Your Honor. Injunction against what? Because I thought you had already sold the house. We have not, Your Honor. Where did I read that? Okay. Ultimately, the house was, as I understand it, was foreclosed on in September 2019. Well, if it was foreclosed on, what will an injunction do? I don't know that an injunction is viable, but there's still a claim I believe that's viable for declaratory judgment that the statute of limitations has run. Well, they can't give you back the house. I understand that, and for what it's worth, we agreed to a short sale and spent a lot of time and a lot of money getting the house ready for sale. SLS rejected one offer of $1,075,000, did not respond to two other offers of $940,000 and $950,000, respectively. The last was all cash. It sits there. SLS, or I guess it would probably be the underlying mortgagee, owns the property. We have asserted, among other things, there's a genuine dispute of material fact with respect to SLS's status as a, quote-unquote, mortgage servicer. December 2015, SLS sent the plaintiffs and appellants a notice of servicing transfer stating it was the, quote-unquote, new servicer, effective December 2015. That's the only document that the appellants have ever received asserting that SLS is the supposed mortgage servicer. Texas Property Code, Section 51.0001, subsection 3, defines a mortgage servicer as the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt by a security instrument. And ultimately, Texas law further provides that only a mortgagee or a mortgage servicer has the right to send notices of default. Well, I realize you haven't paid anybody, but if you keep getting these notices, did you ever object to SLS being the servicer and to not having had appropriate notice? Many times, Your Honor. And you say we haven't paid or didn't pay. In March of 2010, Wells Fargo sent back our mortgage payment and refused to accept it. I understand, but that was nine years ago. That's true. And you continued to live in the house probably at least until 2019, so. Correct. Yes. Well, that's a pretty long time free rent, but, or unpaid rent. But again, did you, at some point, didn't you ask SLS for a copy of the balance? Yes, Your Honor. So you knew that they had some role in the servicing? That's true. But nonetheless, the statute is the statute. Well, I say, I don't, I would admit they had some role in the servicing. I would call them a payment processor. They don't meet the definition of a mortgage servicer under Texas law. And there is case law that discusses that, specifically the Shelton v. Flagstaff Bank case. It's a United States District Court case out of the Southern District of Texas. It's cited in the reply brief, in which the plaintiff there claimed the defendant, saw actually a declaratory judgment when the defendant bank claimed it was a mortgage servicer. The court went through the analysis under section 51.0001, subsection 3 of the property code, and noted that the defendant bank failed to comply with that section, and also failed to establish under section 51.0035 that the bank failed to establish that it had entered into an agreement allowing it to be the mortgage servicer, again, another requirement under Texas law. And here, the defendants have asserted they don't have the obligation to provide the mortgage servicer agreement. Clearly, the statute and the case law provides that they do. I want to turn my attention to . . . Can I interrupt you for a second? Certainly. In the district court's order, footnote, it said, you failed to assert any causes of action. And you've only asserted forms of relief in the form of a claim for declaratory and injunctive relief. Right. And the district court goes on to say, I could grant summary judgment on that basis alone. So, I guess my first question is, what are the causes of action? Well, I think it's the declaratory judgment action, the flight of . . . Right. But the district court is saying, no, that's a form of relief that you request. Right. But the district court's saying, what are your underlying causes of action, is what I'm getting at. I'm just asking, what are they? In part, breach of agreement, breach of contract. And where did you assert a breach of contract claim? In the pleadings. There's an allegation in the pleadings that Wells Fargo breached the loan modification agreement, and the breach of that agreement precludes Wells Fargo or anyone that would step into their shoes from foreclosing because the failure to perform as a material breach, which excuses the non-breaching party from performing. And also under Texas law, when one party breaches, the other party's performance is excused. Anything else? Anything beyond breach of contract? I can't think of anything at this time. With respect to attorney's fees, the court awarded fees in Section 9 or Bullet Point 9 of its order dated December 12 of 2018 solely because the appellants failed to show or allegedly failed to show that the filing of the action was not in bad faith. I would assert that the court got it wrong. The court inverted the burden of proof. I would assert there's no evidence in the record that the appellants filed the action in bad faith. Also the court used the wrong standard. The defendants sought attorney's fees in part pursuant to Texas Rule of Civil Procedure 13, which requires a finding that an action is both groundless and in bad faith, and there was no finding, no discussion whatsoever that anything the appellants did . . . I understand that, Your Honor, but the court did not award attorney's fees based upon the deed of trust. Well, but they're still owed. I think we can agree to disagree on that. I would suggest to the court that attorney's fees were awarded in the amount of over $16,500 in connection with proceedings that preceded the instant litigation, namely the two bankruptcy cases. That's right, when they were enforcing their lien.  Well, I would still assert as well that there are other fact issues with respect to the award of attorney's fees. The defendants did not designate Mr. Shepard as an expert on attorney's fees, which requires exclusion of his opinions. The attorney's fees requested were redacted from the fee statements provided by counsel. There's very limited ability to test the request that the fees were necessary and reasonable. Section 38.03 of the Texas Civil Practice and Remedies Code also requires a proof of customary attorney's fees, which was not done. Some of the fees were awarded for timekeepers who were not attorneys, which requires a special showing. And then again, I put in an affidavit, Mr. Marsh put in an affidavit controverting the necessity, reasonableness, and customary nature, if any, of the fees. So I would assert for the reasons mentioned in viewing the evidence in the light most favorable to the appellants, disregarding all contrary evidence and inferences, and giving the plaintiffs the benefit of all reasonable inferences, that there are material disputes and there is a genuine fact. And the court should reverse the judgment and remand for trial. Are there other arguments raised in the briefs? Yes, Your Honor. Well, if you went to trial, what would you get? I think we would get an order saying something to the effect that SLS was not the mortgage done by Wells Fargo back in 2013, limitations is run. So there's no viable ability for SLS to foreclose. The foreclosure would be declared invalid. I'm happy to answer any other questions, Your Honor, but I finished my argument. Okay. I think we have no questions. Very good. Thank you. All right. Thank you. Mr. Shepard. May I please the court? The relief that Mr. Marsh seeks in this appeal is relief that is not requested in the original pleadings. It's not in the original complaint. It was not in response to summary judgment. The only thing that is in the original pleadings is a request to have declaratory judgment that the statute of limitations expired, as Your Honor stated in Mr. Marsh's oral argument. This in fact is a very simple case and a very simple appeal, and the Fifth Circuit should affirm the trial court's summary judgment because, one, the summary judgment evidence fully supports summary judgment in this case, and the legal authority fully supports summary judgment in this case, and the Marsh's arguments in this case are fatally flawed. The majority of the Marsh's brief here contains issues and alleged causes of action that this And, as Your Honor pointed out, the district court properly noted in footnote at the bottom of page 3, record on appeal 1177, the only relief the Marsh's seek in the original complaint is declaratory relief, asking that the court find that the statute of limitations to foreclose expired and that the mortgage lien is void. There are no other issues for the trial court to consider. There are no other issues for this court to consider on appeal. Mr. Marsh claimed to have asserted a cause of action for breach of contract. Do you agree with that? I don't. To the extent that there is a breach of contract claim that can be raised arguably through the facts section of the complaint. That's the only place that we could see a breach of contract cause of action. To the extent that that is there, the only little box that that can be in is with respect to foreclosure notices that the Marsh's allege were not sent. The summary judgment evidence proves that they were. The summary judgment evidence is clear. The trial court found that it was clear. There's multiple exhibits. Well, I think he's arguing breach of contract insofar as there was supposedly this reworking by Wells Fargo long ago. And he alleges they started making payments pursuant to the renegotiation. Right. And that allegation is not in the pleadings. It's not in the complaint. The only thing that can be read into that complaint, if you parse through the lines a little bit, is a breach of contract based on lack of notice. There is no interpretation of that original complaint, which the original complaint is the live complaint. There was no amended complaints at all in the case. The only thing that you can read as you parse through the lines on a breach of contract claim is a breach of contract based on lack of notice of the foreclosure notices, notice of default, notice of intent to accelerate, notice of acceleration, notice of sale. There is nothing that can be read into the complaint for breach of contract for any other reason other than those notices that the Marsh's say they did not receive. But again, under Texas law, receipt is not necessary. The mailbox rule applies under the Texas property code. There are no formal causes of action against the appellees. There's no breach of contract other than what we just talked about. To the extent there is the claim, it's only the lack of notice. There are no allegations in the complaint at all related to the loan modification. That is only raised in response to summary judgment and it's only raised here on appeal. But it is not in the complaint. It is not part of the original lawsuit. And frankly, that's why it was not raised in the motion for summary judgment that the appellees filed because it's simply not part of the original lawsuit. There are no allegations in the original complaint that specialized loan servicing is not a mortgage servicer or is not a mortgage servicer in connection with the Marsh's loan. There are no allegations in the complaint related to a show me the note theory, which I'm sure this court is aware, under Texas law, Texas law roundly rejects a show me the note type of theory. In the summary . . . Just looking at the district court's order, I'm going to parse what the district court did. I've already called y'all's attention to the footnote where the district court says, well, there's no causes of action here. But then he goes on to make some sort of, I don't know if they're in the alternative findings and saying, well, there's no material faxes to this and there's no material faxes to this. No dispute. So is it kind of a sort of belt and suspenders kind of approach by the district court? Is that what's going on? I think that is because the response to the motion for summary judgment raises all of these things that are not in the original complaint. The original complaint is very narrow and it addresses only the declaratory judgment as a form of relief. As the district court notes, there are no formal causes of action. The only relief requested is a declaratory judgment that the foreclosure or that the lien is void and that we can't foreclose. The summary judgment evidence, if there is a breach of contract claim, proves that the notices were in fact sent. The mailbox rule applies. Receipt is not necessary under Texas law. The allegation that the mortgagee accelerated the indebtedness multiple times between March 2010 and June 6, 2013 is, with all due respect to the Marshes, meaningless when there are multiple instances during that time and thereafter where the mortgagee decelerated any previous accelerations during that four-year period after those accelerations. Those instances of deceleration occurred in that four-year statute of limitations, for example, when new notices of default were sent that seek less than the total secured debt. And there is Texas law, Leonard v. Ockwin Loan Servicing, 616 Federal Appendix 677, page 680, the Fifth Circuit, 2015, where this court found that unilateral abandonment of acceleration resets the bank's four-year statute of limitations. This is identical to what occurred here. Exhibits D, G, and J of the motion for summary judgment are the notices of default that show that any prior accelerations are void at that point because the notices of default seek less than the total amount due. These notices were within the four-year statute of limitations as the date specified on the The appellants, the marshals, provide no evidence to rebut that the bank's documents regarding unilateral abandonment of acceleration are in any way invalid. And the documentation and the evidence of abandonment are at record on appeal between pages 492 and 525. With respect to the lack of notice, any issue on appeal that addresses whether specialized loan servicing had authority to send the notices of default is not germane to this appeal because it is not raised in the complaint. This court, and frankly the trial court, cannot consider the issues pertaining to the loan modification because it's simply not part of the original complaint. It's not addressed in the motion for summary judgment for that reason. It wasn't raised until a response to summary judgment, and then it's raised here on appeal. That is not germane to this case. It's not germane to the appeal. The marshals admit that they received notice from the mortgage servicer, both from Wells Fargo saying, we're no longer servicing this loan, you'll ultimately send your payments to specialized loan servicing, and the marshals admit that they received notice from specialized loan servicing that, hey, we're your new mortgage servicer. The marshals want this court to adopt an unheard-of proposition under Texas law that the mortgage servicers, for lack of a better word, the welcome letter or hello letter, must come directly from the mortgagee. That's simply not the case. There is no instance where a mortgage servicer has been held not a mortgage servicer because the letter came from the mortgage servicer and not the investor or the mortgagee. It's just an untenable position that the marshals take in this case. If the marshals don't receive the letter, they want this court to find any action the servicer takes thereafter is void. Again, that's simply not the case under Texas law. There is no legal authority to support these propositions at all, even if there was, the marshals see this issue in the complaint, and frankly, they don't even fully address it in the motion for summary judgment adequately because there's no citation to any case law or any legal authority that supports that proposition. With respect to the show-me-the-note theory, the only... We're pretty familiar with that issue. Yes, Judge. That is not even raised in the complaint, so that can't be addressed by this court. The other issue I'd like to shift gears to is the request for attorney's fees. The trial court is reviewed in this court for an abuse of discretion. As to the issue of attorney's fees and costs, Specialized Loan Servicing and U.S. Bank filed a counterclaim asking for attorney's fees for two reasons. The loan documents, namely the deed of trust, allows for it, and two, that this case was filed in bad faith by the marshals for no other reason but to delay matters and to extend time in the property after being in default for many, many years. So, not only do we bring a bad faith claim, which the trial court references in the order, the loan documents, specifically Section 9 of the deed of trust, allows for it. There is no legal authority that the marshals raise that the affiant, namely myself, seeking attorney's fees has to be designated as an expert in the expert designation. When the motion for summary judgment was filed... I don't need to beat this over the head. We're familiar with attorney's fees. Thank you, Judge. The Fifth Circuit's ruling in Richardson v. Wells Fargo from 2014, which I believe Your Honor authored, these cases are identical, or this case is identical, to the issues raised in Richardson. Here, the only shift to that is that the marshals say that the lender, the servicer, are not entitled to attorney's fees because he was in bankruptcy, and we can't collect the attorney's fees while he was in bankruptcy. Again, Your Honor mentioned, this default has been going on for nearly a decade. The marshals have used bankruptcy, this litigation, and this appeal as nothing more than a delay tactic and to increase the cost of litigation. The loan documents specifically provide, Section 9 of the deed of trust provides, that the and protecting the lender's rights under the deed of trust. And it says, including its secured position in a bankruptcy proceeding. So in that sense, the attorney's fees are fully collectible in their full amounts. This default, as I stated, and as this court mentioned, has been going on for years. The bank and SLS have continued to pay property taxes, have continued to insure the property, have continued to incur carrying costs, sizable sums in attorney's fees for the bankruptcy for the litigation associated with this appeal, the briefing, travel costs coming here from Houston. The marshals have continued to enjoy the benefits of the property without paying rent, without paying mortgage payments, without doing anything other than living there while he is a practicing attorney. Pursuing litigation in this appeal, as I stated, is nothing more than a delay tactic. And there is no basis whatsoever for this court to reverse the trial court's summary judgment. There is no basis whatsoever for this court to reverse the trial court's award of the attorney's fees. And for these reasons, the Apolese, SLS, and U.S. Bank National Association's trustee respectfully request that the Fifth Circuit affirm the trial court's grant of summary judgment and the trial court's full award of the attorney's fees in excess of $27,000. And thank you. Okay, thank you very much. Mr. Marsh, any rebuttal? To address counsel's remarks, I believe the Shelton case is on point with respect to the fact that this is not necessarily just a show-me-the-note case. It's a show-me-the-authority-to-foreclose. And in that case, the court held the defendant bank had failed to establish that it was the quote-unquote mortgage servicer. And if it was not the mortgage servicer, it had no right to foreclose. There's also another case cited in the brief, Ortiz v. City Mortgage, 954 F. Sep. 2nd, 581, from the Southern District of Texas, 2013, that said there was a justiciable controversy regarding whether the defendant was a mortgage servicer when that defendant alone, and not the mortgagee, purported to give notice to the mortgagor that it was the new mortgage servicer. Also, counsel, I believe, mentioned that there's nothing raised in the complaint or petition since this was filed in state court as to whether SLS was or was not the mortgage servicer. I believe counsel may have misspoken because paragraph 18 of the plaintiff's original petition states, quote, plaintiff's dispute SLS's assertion that it allegedly is the mortgage servicer, unquote, allegedly representing the current mortgagee, unquote, referenced in their documentation because defendants have failed to comply with applicable law for SLS to be the mortgage servicer. Also, counsel references SLS sending notices of default, notices of exhilaration letters, and the law is that if SLS is not the mortgage servicer under Texas law, it doesn't have the ability to do that. If these don't count, then you would have to go back to Wells Fargo's last notice of exhilaration. That's summer of 2013, the last ostensible valid notice of exhilaration. What's your best case for saying that somebody who hasn't paid a dime, well, tried, but has not paid a dime on a mortgage for eight or nine years is entitled, assuming it hadn't been foreclosed, entitled to live in the property rent-free? I wouldn't say it was necessarily rent-free. Did you ever tender any full 900,000 or any full amount due on the house? We disputed the amount due. I'm sure you did, but... We did not tender $900,000, Your Honor. We did spend a lot of money, probably $350,000, engaging in repairs on the house. The roof was falling in. There was a lot of water damage, mold damage. There was mold remediation, etc. So we did preserve the collateral. At least we did that. Last thing with respect to the filing of the bankruptcy, there's competent evidence before the court, and the only evidence before the court is the fact that the Marshals filed bankruptcy because the IRS was engaging in enforcement actions and seized a bank account. There was a discharge order entered, and then the IRS ignored the discharge order, which required Mr. Marsh to file a second bankruptcy, which was then dismissed with the agreement of the Chapter 11 trustee. So, although counsel argues that was all done to prevent foreclosure, that's really not the case. There were bankruptcy stays in force and restrained orders in force for a period of only about eight months out of the ten years that this has gone on. So, that's all I have, Your Honor. All right. Okay. Sorry to disappoint people in the audience, but the court will stand in recess for about ten minutes.